UTICA,
August, 1823.

TROTTER
v.
HAWLEY.

One of the defendants having omitted to put in special bail, the plaintiffs' attorney, for that reason, refused to receive a plea; but a few days after filed common bail, and entered a default, and it was holden regular; but set aside on affidavit of merits, upon terms.

TROTTER & DOUGLASS *against* HAWLEY & ROSÉ.

THE plaintiffs having declared, *de bene esse*, and special bail being due, one of the defendants had omitted to file bail. A plea was offered to the plaintiffs' attorney, which he refused to receive for that reason; but, a few days after, he filed common bail, and entered the defendants' default.

*maile, Bro.* Jurors, pl. 13, S. C.) The same law seems to be of fire upon the house (*ib. ibid. Vin.* Abr. tit. Trial. (G g 4.) So in *Com.* Dig. tit. Enquest, F. ; if the jury separate on account of a great tempest, they shall not be amerced. (*Plowd.* 13 b. 15 *Hen.* 7. 1 b. 14 *Hen.* 7. 30.) In 4 *Bla.* Com. 360, it is said, that when the evidence on both sides is closed, and indeed when any evidence hath been given, the jury cannot be discharged (unless in cases of evident necessity, *Co. Litt.* 227, 3 *Inst.* 110. *Fost.* 27. *Gould's* case, *Hil.* 1764) till they have given in their verdict, but are to consider of it, and deliver it in with the same forms as upon civil causes, only, they cannot, in a criminal case, which touches life or member, give a privy verdict. But the Judges may adjourn while the jury are withdrawn to confer, and return to receive the verdict in open Court. In *Parke's* case, 2 (*Roll.* Rep. 85,) at *Nisi Prius*, a juror was challenged and withdrawn, and afterwards went out with the jury and stayed with them above half an hour. And by *Croke & Doddridge*, this act shall not set aside the verdict, unless it can be proved that they had new evidence given after they went out of Court, but it is a misdemeanour in him who was challenged, and punishable. (2 *Hale*, P. C. 308, 9. *Vin.* Abr. Trial, G g 4. See also Lord *St. John* v. *Abbot*, *Barnes*, 441.) This cause was tried at the *Northampton* Summer Assizes, (8 *Geo.* 2.) before Mr. Justice *Reeve*; and after the evidence was summed up in the forenoon, the jury retired to consider of their verdict; before the rising of the Court, they came into Court, attended by the bailiff, to ask a question, which was answered, and they were sent back. At the sitting of the Court in the afternoon, the Judge, was informed that some of the jurymen (two or three) were in Court; whereupon, being asked by him what they did there, answered, they could not agree, and were thereupon sent back to their fellows, and afterwards a verdict was brought in for the plaintiff. The Judge did not certify the verdict to be contrary to evidence, and the Court were of opinion that this was a misbehaviour in the jury, for which they were finable, but not a sufficient cause to set aside the verdict, and the plaintiff was not in fault. If the jury had eat and drank at their own expense, that is a misbehaviour for which they are finable, but their verdict must stand; though it is otherwise if they had eat and drank at the expense of either party. Rule discharged. See al-

On motion to set aside the default for this reason, and on an affidavit of merits,

*Per Curiam.* This was disingenuous in the attorney, but his proceedings were regular. There being an affidavit of merits, we set aside the default on the usual terms.

Rule accordingly.(*a*)

(*a*) *Vid. Wells* v. *Allen, ante,* 60.

so 1 *Vent.* 124; 2 *Rol. Ab.* 715; *Hawk.* B. 2. c. 47. In *Bul.* Ni. Pri. 308, it is said, an officer of the Court ought always to be placed at the door of the box where the jury sit, to prevent any one from having communication with them; and when they depart from the bar, they are to be attended by a bailiff, sworn for that purpose. At the present day, it appears, that the jury will not be permitted to disperse after they have retired for the purpose of considering their verdict; although, in a case of misdemeanour, a dispersion of the jury, with the Judge's concurrence, on an adjournment taking place during the progress of a trial, will not be sufficient to avoid the verdict. Convenience seems to be in favour of this practice. It is always in the power of the Judge to prevent the jury from dispersing where the trial is of such a nature as to render it expedient that the jury should be kept together. Some consideration also seems due to the jury, who are in general, men of active lives and regular habits, and are therefore likely to sustain great inconvenience by being totally prevented, during the continuance of a very long protracted trial, from any attention to their affairs, however urgent."

Accordingly, in *The King* v. *Woolf et al.* (1 *Ch. Rep.* 401) at an adjourned Sittings, at *Guildhall,* in *April,* 1819, *Cor. Abbott,* Ch. J. the trial of an indictment for conspiracy commenced on the morning of the 20th, and continued till about 11 at night. The case being then unfinished, *Abbott* informed the jury that they might retire to their families; but specially warned them not to have any communication, with any person, touching or concerning the matter in issue. They retired, accordingly, and the next morning they assembled again; and, the case being concluded at a late hour in the afternoon of that day, they found the defendants guilty. The defendants, and their attornies, were ignorant of such separation and retirement, until after they had found their verdict.

On motion to set aside this verdict, the cases were fully gone into by four counsel for the defendants; and they cited Lord *Delamere's* case, (4 *Harg. St. Tr.* 232, 1 *Jac.* 2, *A. D.* 1685; and *Kelyng,* 56) where it is said, by all the Judges, (on a question whether the Court could allow the jury to separate) " the jury, being once charged, can never be discharged till they have given their verdict; this is clear; and the reason of that is, for fear of corruption and tampering with the jury. An officer is sworn to